OPINION
{¶ 1} Defendant-appellant Dustin Karl appeals from his conviction and sentence for Felonious Assault, following a bench trial. He contends that his conviction is against the manifest weight of the evidence. We conclude that there is evidence in the record *Page 2 
from which the trial judge, as the finder of fact, could reasonably find, beyond reasonable doubt, that Karl committed the assault. We conclude that the finder of fact did not lose his way, and that this is not the rare case requiring reversal. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} Shortly after midnight on March 25, 2006, Shelly Young was struck in the face with a bar glass at a bar in Dayton, Bimini Bill's, sustaining serious physical injuries. At trial, Karl did not dispute that Young was assaulted and sustained serious physical injuries, but contended that he was not Young's assailant.
 {¶ 3} Young was taken to a hospital for treatment. While there, and while under the influence of medication, she talked to Dayton Police officer Jeffrey Brown. Brown testified that Young told him that she had been struck by a white female:
 {¶ 4} "Q. Okay. And she did in fact tell you that she was assaulted by a white female, yes?
 {¶ 5} "A. Yes.
 {¶ 6} "Q. And you also had said to her that that is not exactly what you believed happened based on the other witness statements, yes?
 {¶ 7} "A. I believe I — I don't remember my exact words. I believe what I told her was the other witnesses said that she was assaulted by a white male.
 {¶ 8} "Q. All right. And what I have in your report is Young stated that that's not what had happened, she again stated that she was struck by a white female, not a white male, correct?
 {¶ 9} "A. I believe that's correct." *Page 3 
 {¶ 10} Young corroborated this, at least to some extent, in her testimony:
 {¶ 11} "Q. And furthermore you stated to the officers, even after they told you that they didn't believe that's what happened, you said no that is what happened, a girl with brown hair struck me in the right side of the face?
 {¶ 12} "A. Well, I don't know because I was completely out of it so I don't know what I told the officer.
 {¶ 13} "Q. So you don't remember saying that?
 {¶ 14} "A. No. Well, actually I do remember a little bit saying because that's the last thing that I do remember seeing so, yes, I did tell them that.
 {¶ 15} "Q. Okay. So you did identify your attacker as being female?
 {¶ 16} "A. At the point in time, yes."
 {¶ 17} Earlier, in her direct testimony, Young testified as follows:
 {¶ 18} "Q. What happened when you approached the bar?
 {¶ 19} "A. Well, I was trying to get the bartender's attention at that point in time to, you know, ask to make sure our tab was paid and I honestly really don't know exactly what happened, but the last thing I remember is seeing a girl, dark hair, in my face.
 {¶ 20} "Q. Did she say anything to you?
 {¶ 21} "A. Fucking bitch.
 {¶ 22} ". . . .
 {¶ 23} "Q. And what happened next?
 {¶ 24} "A. I was hit in the face.
 {¶ 25} "Q. And did you see who did it? *Page 4 
 {¶ 26} "A. No.
 {¶ 27} "Q. What do you remember next?
 {¶ 28} "A. I remember — I kind of stood there for like a split second and the first thing that came to my head was go to the bathroom. So I did, made a kind of bad decision to look in the mirror because my face was a complete mangled mess.
 {¶ 29} "Q. What do you remember next in the evening?
 {¶ 30} "A. I remember a nurse coming out of the bathroom stall. I just kind of vaguely remember her saying I'm a nurse, I can help you. After that I remember being in an ambulance on the bed and — I remember seeing somebody wanting to come in but they weren't allowed and then I remember being in the hospital and then actually now I remember the — them asking me if they can cut my shirt and then after that I remember being in the hospital.
 {¶ 31} "Q. Okay.
 {¶ 32} "A. And that's it.
 {¶ 33} "Q. And is that all you remember about that night?
 {¶ 34} "A. Besides the priest asking — being there. There was a priest and he freaked me out.
 {¶ 35} "Q. Do you-
 {¶ 36} "A. (Unintelligible.)
 {¶ 37} "Q. Do you remember talking to an officer, if at all, during the hospital?
 {¶ 38} "A. (Inaudible.)
 {¶ 39} "Q. Are you aware now that you did talk to an officer at the hospital? *Page 5 
 {¶ 40} "A. No.
 {¶ 41} "Q. Okay. Are you aware that you told an officer that a female hit you?
 {¶ 42} "A. Only because I was told that. That's what I said.
 {¶ 43} "Q. Okay. Do you know why, if at all, you may have told an officer that?
 {¶ 44} "A. Because that was the last person I saw right when it happened."
 {¶ 45} The State called two eyewitnesses. Brad Wilson, the bar manager, testified that as he walked toward a girl yelling profanity at Young, he saw Karl "[h]it Shelly [Young] with a rocks glass." Wilson testified that he was "[n]ot even five feet" away when he saw Karl hit Young with the glass, and that he had an "[unobstructed" view. Wilson testified that he saw Karl "go over the top of the girl standing in front of him and hit Shelly in the eye."
 {¶ 46} David Puckett also testified on behalf of the State:
 {¶ 47} "Q. Okay. Can you tell us then, when Shelly got up to leave to go to the bathroom what you witnessed?
 {¶ 48} "A. I was sitting there and I looked up as Shelly got up to start to walk away and she walked to the bar, she was checking to see if we paid our tab. Then when I looked away and then I looked back, I saw Shelly standing like this (indicating) and then I saw the guy that is sitting right there take a bar glass and come around the side of her face and hit her — I seen him hit her in the side of the face with what was then found out to be a bar glass.
 {¶ 49} "Q. Let me ask you, how far away were you when you observed this?
 {¶ 50} "A. Probably from me to him. Where he's sitting.
 {¶ 51} "Q. So — I don't know. Twenty feet, twenty-five feet. *Page 6 
 {¶ 52} "A. If that far.
 {¶ 53} "Q. Were there people in between you and him?
 {¶ 54} "A. No. Because the way the tables are kind of sitting, I mean there was a crowd of people around him at the bar. I mean, the way the tables are sitting, I could see directly to him."
 {¶ 55} Later in his testimony, Puckett made it clear that he was referring to Karl as the assailant.
 {¶ 56} Karl testified in his defense. He testified that he was involved in a fight with a number of people, and as he was being pulled to the ground, threw a bar glass, but was not aiming for anyone, and did not know where the glass went. His testimony was corroborated by his sister, Sarah Karl, who testified that Young attacked her, and was hit by a glass flying through the air, although she did not see who threw the glass. Karl's girlfriend, Chelsea Long, also testified in his defense. She said that she observed Young attack Sarah Karl, and that Dustin Karl was about fifteen or twenty feet away at that time, and therefore could not have smashed a glass into Young's face.
 {¶ 57} As a result of her injuries, Young was hospitalized for three days, she is blind in her right eye, which will be replaced by a silicon ball, her right cheekbone was broken, and she suffered a chipped tooth. She suffers headaches and sinus problems as a result of the cuts to her face.
 {¶ 58} Karl was arrested and charged with Felonious Assault. He waived a jury and was tried before the late Judge Davis of the Montgomery County Common Pleas Court. Judge Davis found Karl guilty as charged, and imposed a six-year sentence. From his conviction and sentence, Karl appeals. *Page 7 
 II {¶ 59} Karl's sole assignment of error is as follows:
 {¶ 60} "THE CONVICTION SHOULD BE REVERSED AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 61} In conducting a weight-of-the-evidence review, an appellate court sits as a "thirteenth juror," weighs the evidence, and determines whether the finder of fact lost its way by reaching a result that is manifestly against the weight of the evidence. State v. Thompkins
(1997), 78 Ohio St.3d 380, 678 N.E.2d 541.
 {¶ 62} Where the weighing of the evidence involves conflicting testimony, as opposed to competing inferences (as in State v.Thompkins, supra), the reviewing court must give substantial deference to the credibility determinations by the finder of fact, who has seen and heard the witnesses testify. State v. Lawson (August 22, 1997), Montgomery App. No. 16288. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Elmore,111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ?44.
 {¶ 63} Karl argues that this is the rare case where a conviction should be reversed as being against the manifest weight of the evidence because Young, the complaining witness, initially told police that a white female assaulted her. In our view, Young, who acknowledged at trial that she could not say who struck her with the glass, gave a satisfactory explanation of her hospital statement to the police. She was under the twin influences of medication and the trauma of her injuries, and the last person she *Page 8 
had seen before being struck was a white female, who angrily called her a "fucking bitch." It was natural for Young to infer that this was the person who struck her with the glass.
 {¶ 64} Karl, his sister, and his girlfriend were, of course, all subject to a bias in his favor. Brad Wilson, the bar manager who testified on behalf of the State, had no apparent bias in either direction. David Puckett, who also testified on behalf of the State, was the victim's fiancé, but had no apparent bias against Karl other than as his fiancé's assailant. In other words, although he was presumably hostile to Karl at the time of the trial, he would have had no apparent motive to have misidentified Karl as the assailant.
 {¶ 65} Finally, the extensive injuries to Young's face appear to be more consistent with her having been struck by someone wielding a glass as a weapon, consistently with Wilson's and Puckett's testimony, and less consistent with having been struck by a thrown glass flying through the air, consistently with the testimony of Karl and his sister.
 {¶ 66} We conclude that Judge Davis, the finder of fact, did not lose his way, and this is not the rare conviction meriting reversal as being against the manifest weight of the evidence. Karl's sole assignment of error is overruled.
 III {¶ 67} Karl's sole assignment of error having been overruled, the judgment of the trial court is Affirmed. *Page 9 
 BROGAN and DONOVAN, JJ., concur. *Page 1